UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JESSICA ROBERTS,

    Plaintiff,

v.                                            Case No. 16-C-122

NANCY BERRYHILL,

    Defendant.

**DECISION AND ORDER**

Plaintiff filed this action challenging the decision of the Commissioner of Social Security denying her disability benefits. For the reasons given below, the decision of the Commissioner will be remanded for further proceedings.

**I. Background**

Unlike many Social Security appeals, this action challenges a narrow ruling by the ALJ. In particular, the Plaintiff argues that the ALJ erred at Step 2 of his five-step analysis by not finding her fibromyalgia to be a medically determinable impairment. Given the narrowness of the issue, I will limit my discussion to the facts that are relevant to that conclusion.

The Plaintiff applied for Social Security Disability Benefits, citing bipolar disorder, carpel tunnel syndrome, lateral epicondylitis, fibromyalgia, and other conditions. After being denied benefits, she requested a hearing in front of an administrative law judge. At her 2014 hearing, she was thirty-eight years old and testified that she required a cane to move around and said that she moved around so slowly that it sometimes took her an hour just to get ready in the morning. (R.

44.) She stated that her body pain prevented her from moving around very much, and carpel tunnel and tennis elbow made it difficult to lift things or twist. (R. 45.) Her fibromyalgia, she said, affected her "head to toe" with a "whole gamut of pains," including feeling like lightning was going through her body, which made her brain "stop working" for a number of minutes. (*Id.*) She also got pains in her jaw and teeth, as well as cramps in her feet. "A good day for me is a 6 on the pain scale," she said. (R. 46.) Her condition made her drop things frequently and precluded her from doing things like opening a jar.

The ALJ found, however, that although there was evidence of fibromyalgia in the record, fibromyalgia did not qualify as an MDI because the treatment notes found in the record did not contain the specificity that Social Security Ruling 12-2p required. (R. 14-15.) He further concluded that a "fill-in-the-blanks" form prepared by the claimant's attorney did not suffice, either, because the "actual treatment notes" lacked the specificity required by SSR 12-2p. (*Id.*)

**II. Analysis**

The Commissioner's final decision will be upheld if the ALJ applied the correct legal standards and supported his decision with substantial evidence. 42 U.S.C. § 405(g); *Jelinek v. Astrue,* 662 F.3d 805, 811 (7th Cir. 2011). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Skinner v. Astrue,* 478 F.3d 836, 841 (7th Cir. 2007).

As noted at the outset, the Plaintiff's central argument is that the ALJ erred by failing to consider her fibromyalgia to be a medically determinable impairment, or MDI. The ALJ noted that the claimant "mentioned" fibromyalgia during her testimony and that the diagnosis does appear in some medical records, but he concluded the requirements of SSR 12-2p were not met. (R. 14-15.)

The ALJ noted that a form provided by the Plaintiff's attorney said the claimant had tenderness "at all fibro points," but the treatment notes did not back that up with any specificity.

The Plaintiff argues that Dr. Gierl completed a medical source statement on February 2, 2013, which stated that the Plaintiff had a diagnosis of fibromyalgia and was "tender at all fibro tender points." (R. 477.) This 2013 opinion echoed a letter Dr. Gierl wrote on June 29, 2011 to Dr. Kaldas regarding Dr. Kaldas' referral on the question of fibromyalgia. "I concur that she has fibromyalgia," Dr. Gierl wrote, "with numerous tender points and sleep interruption, which has accelerated in the last few months." (R. 306.) Dr. Gierl also consistently noted the Plaintiff's fibromyalgia in her notes of clinical interviews with her (R. 298), and other notes indicate her "long history of fibromyalgia pain." (R. 294.)

The government argues that the ALJ's decision should be affirmed because SSR 12-2p requires a physician to follow one of two sets of criteria to establish fibromyalgia, both of which are based on the American College of Rheumatology Criteria from either 1990 or 2010. Among these criteria are a showing of tenderness at at least 11 tender points on physical examination, and these points must be found bilaterally as well as above and below the waist. SSR 12-2p. The government argues that the ALJ correctly determined that the medical record does not specifically establish that the claimant was diagnosed by Dr. Gierl (or anyone else) based on these criteria. In other words, nowhere in the record is it documented that the Plaintiff had at least 11 tender points that are found bilaterally above and below the waist.

Although SSR 12-2p sets forth a specific protocol for the establishment of fibromyalgia, it does not go so far as to require a medical record to contain "magic words" involving the trigger points. Here, Dr. Gierl, a rheumatologist, concluded that the Plaintiff met "all" of the trigger points.

3

(R. 477.) Although Dr. Gierl's notes did not indicate that the trigger points were bilateral or above and below the waist, that may be assumed because the Plaintiff had tenderness at "all" of the points (there are 18 in total). In other words, since she experienced pain at all 18 trigger points, she *necessarily* experienced pain at points both above and below the waist and bilaterally. In addition, as a rheumatologist, presumably Dr. Gierl would understand the diagnostic criteria of the American College of Rheumatology and would not have made a fibromyalgia diagnosis had the Plaintiff not met the appropriate criteria. In any event, the notation that she experienced pain at all trigger points means that she did, in fact, meet the diagnostic criteria. The mere fact that Dr. Gierl did not make that explicit does not mean it cannot reasonably be inferred from the record.

In support of its argument, the government cites two district court opinions from outside the circuit. In *Clowers v. Colvin,* the ALJ noted that the claimant's physician had diagnosed fibromyalgia but had not specifically found tenderness in at least 11 of the 18 points. "However, Dr. Sohn did not clearly identify tenderness in eleven out of eighteen tender points. Instead, while clearly finding tenderness on plaintiff's elbows and knees, he otherwise found: tenderness on plaintiff's "[u]pper arms," with no indication of a finding at the supraspinatus muscle (near the shoulder blade); tenderness "along the sides of the hips," with no indication of a finding at the greater trochanter (below the hip); and tenderness of the neck, with no indication as to findings at both the back and sides of the neck." *Clowers v. Colvin,* No. C13-0539-RSL, 2013 WL 5835769, at *5 (W.D. Wash. Oct. 30, 2013). Here, by contrast, the Plaintiff's physician noted that she had tenderness at "all" eighteen points. Thus, there is no uncertainty about whether the Plaintiff met the requisite diagnostic criteria. The government also cites a footnote in *Owens v. Astrue,* 2013 WL 753505 *8 n.6, but that footnote also merely indicates that the physician's opinion did not contain

a finding that pain was present in at least 11 of 18 points.

In contrast to these inapposite and nonbinding authorities, at least two cases within the circuit have remanded on the grounds proposed by the Plaintiff. In *Olson v. Barnhart,* for example, the court found that "on at least two occasions, Dr. Shamim reported that plaintiff had tenderness in all 18 of the 18 diagnostic trigger points . . . Contrary to the ALJ's conclusion, the presence of tenderness at the trigger points, combined with plaintiff's reports of all-over pain and fatigue, provided clinically demonstrable evidence that plaintiff suffers from fibromyalgia." No. 06-C-204-C, 2006 WL 3025657, at *6 (W.D. Wis. Sept. 25, 2006). And in *Cole v. Colvin*, No. 1:14-CV-01195-SEB-MJ, 2015 WL 1885452, at *5 (S.D. Ind. Apr. 23, 2015) the court concluded that "the medical record, when taken on its face, shows that Cole's chief complaint was fibromyalgia and shows that Dr. Tzetzo diagnosed Cole with fibromyalgia, based on her history. . . .The ALJ improperly determined that such a diagnosis was insufficient to find that an impairment is "severe" and in so doing played doctor . . .") Here, the record contains numerous references to "fibromyalgia" from competent treatment providers, and a statement from the treating rheumatologist that "all" trigger points had produced tenderness. The fact that the physician's statement was on a form provided by the claimant's attorney does not mean it can simply be ignored. Nothing in SSR 12-2p states that the treatment notes themselves must be the exclusive source of evidence for fibromyalgia. The ALJ expressed concern that the form was a "fill-in-the-blanks" kind of form, which could be discounted, presumably, on the grounds that filling in blanks is a conclusory and undetailed undertaking. (R. 14.) In fact, although the attorney's form contained a few boxes the physician could (and did) check, Dr. Gierl voluntarily hand-wrote, unprompted, that the Plaintiff experienced tenderness at "all fibro tender points" and that her muscles and soft tissues were "painful." (R. 477.)

5

As such, the form cannot be written off merely as a conclusory check-the-box form, nor as the self-serving product of the claimant's attorney.

Moreover, if the concern was that the fibromyalgia diagnosis was not adequately documented, presumably it would have been a simple matter for the ALJ to make an inquiry of the treating physician to clarify whether the Plaintiff, in fact, met the criteria of SSR 12-2p. This is especially true when the record shows that the Plaintiff's treating rheumatologist actually concluded (repeatedly) that she had "fibromyalgia," and the apparent sticking point was simply whether she had fibromyalgia *as defined by* SSR 12-2p. As the Seventh Circuit has held in a similar case,

> if the ALJ's real concern was the lack of backup support for [the physician's] opinion, the ALJ had a mechanism to rectify the problem. An ALJ has a duty to solicit additional information to flesh out an opinion for which the medical support is not readily discernable. 20 C.F.R. § 404.1527(c)(3); see also S.S.R. 96–2p at 4 ("[I]n some instances, additional development required by a case—for example, to obtain more evidence or to clarify reported clinical signs or laboratory findings—may provide the requisite support for a treating source's medical opinion that at first appeared to be lacking or may reconcile what at first appeared to be an inconsistency between a treating source's medical opinion and the other substantial evidence in the case record."); *Smith v. Apfel,* 231 F.3d 433, 437–38 (7th Cir.2000) (finding that the ALJ's duty to develop the record included soliciting updated medical records when the ALJ did not afford the treating doctor's opinion controlling weight on that basis); *Smolen v. Chater,* 80 F.3d 1273, 1288 (9th Cir.1996) ("If the ALJ thought he needed to know the basis of [medical] opinions in order to evaluate them, he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physicians or submitting further questions to them.").

*Barnett v. Barnhart,* 381 F.3d 664, 669 (7th Cir. 2004)

And, in another case, a district court reached a similar conclusion on almost identical facts:

Although there are references in the record to Hill's having at least some tender points, no medical source referenced in the record had identified Hill as having at least eleven out of the eighteen tender points as is usually necessary to confirm a diagnosis of fibromyalgia. Thus, the ALJ did not have sufficient evidence to decide whether Hill was disabled on this basis, and the ALJ had to "try to obtain additional evidence." 20 C.F.R. § 416.912(d). We note here that Hill's attorney was not

particularly helpful in highlighting for the benefit of the ALJ the absence of a tender-point test so that the ALJ could try to obtain evidence. Hill's attorney in fact specifically informed the ALJ that the record was closed and failed to request an extension of time to obtain more medical evidence. However, according to applicable regulations, the Social Security Administration promises that "when the evidence we receive from your treating physician ... is inadequate for us to determine whether you are disabled, ... [w]e will first recontact your treating physician ... to determine whether the additional information is available ... when the report from your medical source ... does not contain all of the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.912(e)(1).

*Hill v. Astrue,* No. 1:09-CV-552-SEB-TAB, 2010 WL 3883236, at *6 (S.D. Ind. Sept. 27, 2010).

In sum, I am satisfied that the medical record established that the Plaintiff's fibromyalgia was a medically determinable impairment, or at a minimum that further inquiry was required. Accordingly, the case must be remanded to the Commissioner for further proceedings.

### III. Conclusion

The decision of the Commissioner is remanded under sentence four of 42 U.S.C. § 405(g). The clerk will enter judgment accordingly.

**SO ORDERED** this 20th day of March, 2017.

/s William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court

7